[ORAL ARGUMENT NOT YET SCHEDULED]

IN THE

## UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

Case No. 12-7102

_____

JEFFREY STEIN AND RABINDRANAUTH RAMSON,

*Plaintiffs-Appellants*

v.

BANK OF AMERICA CORPORATION
BANK OF AMERICA, NA
FIA CARD SERVICES, NA
MBNA TECHNOLOGY, INC.,

*Defendants-Appellees*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

CORRECTED BRIEF FOR PLAINTIFF-APPELLANTS

Joseph A. Hennessey, Esq.
DC Bar No. 453582
Attorney for Plaintiff-Appellants
Beins, Goldberg & Hennessey, LLP
2 Wisconsin Circle, Suite 700
Chevy Chase, MD  20185
240-235-5040
JHennessey@bghllp.com

## CERTIFICATE OF PARTIES AND DISCLOSURE STATEMENT

### A.     Parties.

Messrs. Rabindranauth Ramson and Jeffrey Stein are the Appellants having been Plaintiffs in the proceedings before the United States District Court for the District of Columbia.  Bank of America Corporation; Bank of America, NA; FIA Card Services, NA; and MBNA Technology, Inc. are the Appellees having been Defendants in the proceedings below.  No *amicus curiae* briefs are anticipated by Appellants.

### B.     Rulings Under Review.

Appellants appeal the August 28, 2012 Order of Dismissal and accompanying Memorandum Opinion of the Honorable Reggie B. Walton.  The District Court's Memorandum Opinion is reported at *Stein v. Bank of Am. Corp.*, 2012 U.S. Dist. LEXIS 122339 (D.D.C. Aug. 28, 2012).

## RELATED CASES

Pending before the District of Columbia Court of Appeals is the case Robin Floyd et al. v. Bank of America Corp. et al., Case No. 12-cv-591.  At issue in that action is whether Appellants have standing under the District of Columbia Consumer Protection Procedures Act to file suit against Bank of America and various subsidiaries ("Appellees") where, among other things, Appellees fail to

disclose a material fact to its customers, *to wit* that Appellees' transmission of Appellant's telecommunications and financial records to foreign nationals residing overseas affects a forfeiture of U.S. law protections against the seizure and search of such materials by the U.S. Government.

## CORPORATE DISCLOSURE STATEMENT

| | |
|---|---|
| Plaintiffs-Appellants | Jeffrey Stein, Rabindranauth Ramson |
| Defendants-Appellees | Bank Of America Corporation<br>Bank Of America, NA<br>FIA Card Services, NA<br>MBNA Technology, Inc. |
| Counsel for Plaintiffs | Joseph Hennessey, Esq.<br>Beins, Goldberg & Hennessey, LLP |
| Counsel for Defendants | Ana-Maria Ignat, Esq<br>Jessica Kaufman, Esq.<br>Michael B. Miller, Esq.<br>Mark P. Ladner, Esq.<br>Morrison & Foerster LLP |
| B) Corporate Ownership | Bank of America, N.A., FIA Card Services, N.A., MBNA Technology, Inc. have indicated that their parent corporation is Bank of America Corporation. Bank of America Corporation is the only publicly-held corporation that owns 10 percent or more of the stock of Bank of America, N.A., FIA Card Services, N.A., and MBNA Technology, Inc. Bank of America Corporation is publicly traded on the New York Stock Exchange. No publicly held corporation owns 10 percent or more of Bank of America Corporation's stock. |

# TABLE OF CONTENTS

CERTIFICATE OF PARTIES AND DISCLOSURE STATEMENT .......... i

RELATED CASES .......... i

CORPORATE DISCLOSURE STATEMENT .......... ii

TABLE OF AUTHORITIES .......... iii

GLOSSARY .......... viii

STATEMENT OF JURISDICTION .......... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .......... 1

STATEMENT OF THE CASE AND DISPOSITION BELOW .......... 2

STATEMENT OF FACTS .......... 3

ARGUMENT .......... 5

  I. Summary of Argument. .......... 5

  II. Argument. .......... 9

    A.    The District Court Erred in Articulating its Authority in Considering a Motion to Dismiss under Fed. R. Civ. P. 12 (b)(1). .......... 9

    B.    The RFPA Legislative History Makes Clear that Appellees Must not Provide Government Authorities Access to Customer Financial Records and that Congress Intended Low Jurisdictional Barriers for a Claim. .......... 12

        1.  Prior to the RFPA, the Supreme Court Refused Broad Protection of Bank Records. .......... 13

            California Bankers Ass'n v. Shultz. .......... 13

            United States v. Miller. .......... 15

        2    The RFPA was Congress's Reaction to Miller. .......... 16

        3.    The RFPA in its Current Form. .......... 20

    C.    The District Court Erred in Dismissing Appellants' Complaint. .......... 22

        1.    The District Court Relied on Case Law Inapposite to the RFPA. .......... 22

        2.    The District Court Ignored the Deliberately Low Jurisdictional .......... 26

Threshold for RFPA Actions.

CONCLUSION                                                                30

CERTIFICATE OF COMPLIANCE WITH RULE 32(A)                 A

CERTIFICATE OF SERVICE                                               B

# TABLE OF AUTHORITIES[1]

## Cases

*Amidax Trading Grp. v. SWIFT SCRL*, 607 F. Supp. 2d 500 (S.D.N.Y. 2009) . - 24 -

*Amnesty Intl. v. Clapper*, 638 F.3d 118 (2nd Cir 2011) ..................................... - 28 -

*Astoria Federal Savings & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991) ........ - 22 -

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (U.S. 2007)* ..................................... - 11 -

*Bennett v. Spear*, 520 U.S. 154 (U.S. 1997) ...................................................... - 26 -

*Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) ........................... - 28 -

*Brooks v. Ro*ss, 578 F.3d 574 (7th Cir. 2009) ...................................................... - 7 -

*California Bankers Ass'n v. Shultz*, 416 U.S. 21 (U.S. 1974) ............................ - 14 -

*Carroll v. Morrison Hotel Corp.*, 149 F.2d 404 (7th Cir. Ill. 1945)* ................... - 7 -

*Coalition for Mercury-Free Drugs (COMED Inc.) v. Sebelius*, 671 F.3d 127 (D.C. Cir. 2012) ......................................................................................................... - 6 -

*Herbert v. National Academy of Sciences*, 974 F.2d 192 (D.C. Cir. 1992)* ...... - 10 -

*Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779 (N.D. Ill. 2010)* . - 7, 11 -

*Jabara v. Webster*, 691 F.2d 272 (6th Cir. 1982) ............................................... - 29 -

*Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249 (D.C. Cir. 2005)* ............ - 9 -

---

[1]     Authorities upon which Appellants chiefly rely are marked with asterisks.

*Johnson v. Eisentrager*, 339 U.S. 763  (U.S. 1950 .............................................- 28 -

*Montclair v. Ramsdell*, 107 U.S. 147 (1883) ......................................................- 22 -

*Ruckus Wireless, Inc*., 852 F. Supp. 2d 470 (D. Del. 2012) .................................- 7 -

*Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205 (U.S. 1972) .................- 26 -

*United States v. Miller*, 425 U.S. 435 (1976) ......................................................- 15 -

*United States v. Verdugo-Urquidez*, 494 U.S. 259 (U.S. 1990) ..........................- 28 -

*Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801 (E.D. Va. 2007) ............ - 22,- 23 -

**Statutes**

<u>Right to Financial Privacy Act</u>

12 U.S.C. § 3402 ..................................................................................................- 20 -

12 U.S.C. § 3403...................................................................................................- 30 -

12 U.S.C. § 3412 (a) ............................................................................................- 21 -

12 U.S.C. § 3416 ................................................................................ - 5 -, - 21 -, - 26 -

12 U.S.C. § 3417 (a) (1)........................................................................................- 21 -

12 U.S.C. § 3417 (a) (4)........................................................................................- 21 -

12 U.S.C. § 3418* ............................................................................... - 6 -, - 21 -, - 25 -

12 U.S.C. § 3402 ..................................................................................................- 25 -

12 U.S.C. § 3403 (a)* ................................................................ - 1 -, -13-, -25-

12 U.S.C. § 3416* ........................................................................- 1 -

Other Statutes

15 U.S.C. § 72 ..............................................................................- 27 -

15 U.S.C. § 797 (b)(5) ................................................................- 27 -

28 U.S.C. § 1291 ..........................................................................- 1 -

30 U.S.C. § 1270 (a) ...................................................................- 27 -

33 U.S.C. § 1365 (g) ...................................................................- 27 -

42 U.S.C. § 9124 (a) ...................................................................- 27 -

7 U.S.C. § 2305 (c) .....................................................................- 27 -

**Rules**

Fed. R. App. P. 4 .........................................................................- 1 -

Fed. R. Civ. P.  8(a)(2)* .............................................................- 11 -

Fed. R. Civ. P. 8 (e).....................................................................- 7 -

Fed. R. Civ. P. 12 (b) (1)............................................................- 3, 9 -

Fed. R.Civ. P. 12 (b)(6)..............................................................- 30 -

**Other Authorities**

HEARINGS BEFORE THE SUBCOMMITTEE ON FINANCIAL INSTITUTIONS OF THE COMMITTEE ON BANKING, HOUSING AND URBAN AFFAIRS, United States Senate, Ninety-Fourth Congress, Second Session on S. 1343, June 16 and 17, 1976 ..................................................................................................................- 16 -

GLOSSARY

| | |
|---|---|
| RFPA | Right to Financial Privacy Act, 12 U.S.C. §3401 *et seq.* |
| Op. | Memorandum Opinion of August 28, 2012. |

## STATEMENT OF JURISDICTION

Appellants Rabindranauth Ramson and Jeffrey Stein assert that the United States District Court for the District of Columbia has subject matter jurisdiction in this matter pursuant to the federal Right to Financial Privacy Act, 12 U.S.C. §3401 *et seq*. The United States Court of Appeals for the District of Columbia Circuit is seized with subject matter jurisdiction pursuant to 28 U.S.C. § 1291. Appellants' Notice of Appeal was filed on September 20, 2012, twenty-three days after the entry of the judgment of dismissal and, accordingly, within the prescribed time frame for noting an appeal. Fed. R. App. P. 4. The District Court's dismissal for lack of Article III standing was a final judgment that disposed of all of Appellant. Stein and Ramson's claims.

## STATEMENT OF ISSUE PRESENTED FOR REVIEW

Whether the United States District Court for the District of Columbia erred in dismissing Appellants' complaint for lack of subject matter jurisdiction where it failed to assume the truth of the allegations contained in Appellants' Complaint (and where there were no other disputed or countervailing facts in the record), and where the District Court ignored the low jurisdictional threshold for bringing a claim under the Right to Financial Privacy Act under 12 U.S.C. §3416, and the trigger for financial institution liability as reflected in 12 U.S.C. §3403 (a).

- 1 -

### STATEMENT OF THE CASE AND DISPOSITION BELOW

On August 3, 2011, Appellants filed their initial complaint in the United States District Court for the District of Columbia and asserted, on behalf of a putative nationwide class, two claims under the RFPA, seven claims under the District of Columbia Consumer Protection Procedures Act ("CPPA"), and claims for negligence, bailment and unjust enrichment.  Docket 1.

On October 11, 2011, Appellants amended their complaint to narrow the claims to only those arising under the federal Right to Financial Privacy Act. Docket 5.  On November 1, 2011, Defendants moved to dismiss the Appellants' First Amended Complaint for lack of subject matter jurisdiction and failure to state a claim.  Docket 12.  In the interest of judicial economy and in a cooperative effort to narrow the issues to be decided, the Parties agreed that Appellants would file a Second Amended Complaint on November 22, 2011 to be followed by a renewed motion to dismiss for lack of subject matter jurisdiction and failure to state a claim on December 23, 2011.  Docket 15 and 16.  Also in the interest of judicial economy, the Parties jointly moved on February 29, 2012 to delay briefing on and court consideration of class certification pending the resolution of dispositive motions under Fed. R. Civ. P. 12.  Docket 24.  The Court granted a reprieve from class certification briefing in and Order dated March 1, 2012.  Docket 25. Importantly, for the purpose of reviewing the District Court's order of dismissal

under Fed. R. Civ. P. 12 (b) (1), the Parties have engaged in no discovery and Appellees did not test the factual basis for the assertion of subject matter jurisdiction.  Thus, there have been no facts established in the record outside of Appellants' complaint.

On August 28, 2012, eight months after Appellees filed their motion to dismiss, the District Court entered a ten-page Memorandum Opinion granting their motion under Fed. R. Civ. P. 12 (b) (1); yet, having divested itself of jurisdiction, the District Court refused to consider Appellees' Fed. R. Civ. P. 12(b) (6) motion. Docket Nos. 26 and 27.

### STATEMENT OF FACTS

Appellants' complaint contains the following allegations of fact, none of which have been challenged by Appellees in the form of an Answer or through evidence presented for the Appellants' scrutiny or the Court's review:

Appellants Stein and Ramson are customers of Bank of America Corp. Second Amended Complaint (hereinafter "Complaint") at ¶¶1, 2, 4, 42.  Bank of America, and its subsidiary entities (collectively referred to as "Bank of America," "Defendants," or "Appellees") are financial institutions.  Complaint at  ¶¶5, 6, 7, 8. Bank of America transacts its customers' business through a variety of U.S. and overseas subsidiaries.  Complaint ¶¶6-36.  Bank of America collects and maintains Appellants' financial records.  Complaint at ¶¶44, 45.  As part of its regular

business practice, Bank of America transmits Appellants' customer service telecommunications and attendant financial records to Bank of America customer service centers located outside of the United States. Complaint at ¶¶14, 19, 29, 34, 36. Bank of America has never sought Appellees consent prior to transmitting their telecommunications or financial records to foreign nationals residing overseas. Complaint at ¶¶94 and 95. Appellants Stein and Ramson have both, in contacting and transacting business as customers of Bank of America, communicated with Bank of America customer service representatives that they believe were foreign nationals located outside of the United States.  ¶¶96 and 98. Appellants initiated communication with these Bank of America customer services representatives in a manner prescribed by Bank of America ¶47, and in a manner that did not place them on notice that Bank of America would make the unilateral decision to transit their telecommunications or financial records outside of the United States.  ¶¶50, 47. Foreign nationals residing overseas have no rights under the United States Constitution or any other provision of U.S. law and cannot invoke the protection any provision of U.S. law to protect against intrusions by U.S. Government authorities.  ¶53, 54, 55, 56. The Executive Branch of the U.S. Government conducts itself with the view that its actions overseas, including its accessing electronic signals that originate or terminate in foreign countries, are beyond regulation by Congress and U.S. laws.  ¶¶57-65. The Executive Branch of

- 4 -

the United States Government, in fact, engages in pervasive surveillance of electronic transmissions for the purpose of accessing the content of electronic signals that terminate or originate overseas. ¶¶77-82. Since neither the U.S. Constitution nor the laws of the United States safeguard electronic financial records received by or sent from foreign national residing overseas, United States Government authorities may access such electronic financial records without regard to constraints imposed by U.S. law. ¶76. The transmission of financial records to foreign nationals residing overseas allows U.S. Government authorities to gain access to Appellants' financial record, access that U.S. Government authorities would not have if such financial records were husbanded within the United States. ¶100.

**ARGUMENT**

### I.   Summary of Argument.

In fashioning the Right to Financial Privacy Act, the United States Congress, skeptical of the Executive Branch's willingness to enforce a privacy law that would significantly restrict the Executive Branch's ability to obtain what was once readily available information from banks, crafted an extremely low jurisdictional threshold for a citizen bring an action in the United States District Court to enforce the RFPA's terms. Specifically, 12 U.S.C. § 3416, "Jurisdiction," states:

> An action to enforce any provision of this chapter may be
> brought in any appropriate United States district court

- 5 -

> without regard to the amount in controversy within three years from the date on which the violation occurs or the date of discovery of such violation, whichever is later.

Moreover, 12 U.S.C. § 3418 "Injunctive Relief," states:

> In addition to any other remedy contained in this chapter, injunctive relief shall be available to require that the procedures of this chapter are complied with. In the event of any successful action, costs together with reasonable attorney's fees as determined by the court may be recovered.

Compared to other statutory schemes, the RFPA has an extremely permissive jurisdictional statement as its language is not limited to persons or even those who are "injured" or "aggrieved."

The doctrine of standing requires a plaintiff to demonstrate a personal stake in the outcome of the controversy in order to justify exercise of the court's remedial powers on his behalf. *Coalition for Mercury-Free Drugs (COMED Inc.) v. Sebelius*, 671 F.3d 1275, 1279 (D.C. Cir. 2012). As Bank of America customers who have, through their own personal interactions, reason to believe that Bank of America has provided government authorities with access to their financial records in contravention of the obligations of RFPA, Appellants have demonstrated their personal stake in the outcome of this lawsuit and have pled the necessary nexus between their status and the requirements of this federal statute.

- 6 -

Appellants' thirty-six page, 8,049-word complaint, uses the word "suspect" twice, the word "believe" seven times, and the words "belief" (as in "on information and belief") forty-four times.  The use of these words is necessary because the precise factual details about certain relevant (but not *sine qua non*) facts about sources and methods of electronic signals interception and the instances wherein Appellees transmit financial records overseas are deliberately obfuscated from the public (and Appellants).

As has been recognized for over fifty-five years, Pleadings are required to be construed to do justice.  Fed. R. Civ. P. 8 (e).  Thus, "to refuse to give credence to [facts pled on information and belief] would be opposed to the spirit of the Rules." *Carroll v. Morrison Hotel Corp.*, 149 F.2d 404, 406 (7th Cir. Ill. 1945), *accord Netgear, Inc. v. Ruckus Wireless, Inc*., 852 F. Supp. 2d 470, 474 (D. Del. 2012); *see also Hickman v. Wells Fargo Bank, N.A*., 683 F. Supp. 2d 779, 785 (N.D. Ill. 2010) (*citing Brooks v. Ro*ss, 578 F.3d 574, 581 (7th Cir. 2009) (concluding that the fact that an allegation is brought upon "information and belief" does not make that allegation insufficient in light of the Rule 8 pleading standard as interpreted by *Twombly* and *Iqbal*)).

It is an abuse of discretion and reversible error to dismiss a cause of action on the basis that certain details of how electronic signals are intercepted or transmitted are not known to Appellants.  Far from being based on speculation or

conjecture, the fundamental facts of Appellants' cause of action are not only

concrete, particularized, actual, and imminent, but they cannot be denied by

Appellees.  Specifically, Appellees cannot 1) deny that they are financial

institutions under the RFPA, 2) deny that Appellants are "customers" under the

RFPA, 3) deny that their regular business practice is to transmit customer financial

records to overseas locales, 4) claim that foreign nationals residing overseas can

invoke the protections of U.S. law to bar the U.S. Government access to such

financial records, 5) argue that the U.S. Government is inhibited by foreign laws in

intercepting and accessing electronic signals (including financial records) that

originate or terminate overseas, or 6) argue that the United States is in anyway

hindered by U.S. law when it accesses electronic signals from foreign nationals

who reside overseas, 7) deny that the U.S. Government is engaged in pervasive

surveillance for the purpose of gaining access to electronic signal that originate and

terminate overseas, or 8) claim that they can exempt themselves from the

electronic surveillance dragnet that has been created to gather foreign intelligence.

Appellees have brought a *bona fide* complaint, based on their personal experience

with Bank of America, that alleges that Bank of America is providing government

authorities with access to their financial records in violation of Bank of America's

obligations under Right to Financial Privacy Act.  As Appellants precisely meet the

definition of customer entitled to bring an action under the RFPA and have

- 8 -

demonstrated their personal stake in the outcome of the litigation, they are entitled to maintain an RFPA action in the United States District Court for the District of Columbia.

## II.   Argument.

### A.   The District Court Erred in Articulating its Authority in Considering a Motion to Dismiss under Fed. R. Civ. P. 12 (b)(1).

The District Court's recitation of its authority in considering a motion to dismiss filed under Fed. R. Civ. P. 12 (b)(1) is overbroad.  Specifically, the District Court stated, "The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction.  Accordingly, the Plaintiff's factual allegations in the complaint will bear closer scrutiny in resolving the motion and the court need not limit itself to the allegations of the complaint. Instead, a court may consider such materials outside the pleadings as it deems appropriate to resolve the question of whether it has jurisdiction in the case."  Op. at 4 (internal quotations, citations, and alterations omitted). This statement is overbroad and, in the context of the procedural posture of this case, an error of law.

Though a district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction, "the court must still accept all of the factual allegations in the complaint as true." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253-1254 (D.C. Cir. 2005) (internal quotations, citations, and alterations omitted).  And though, when necessary, the

- 9 -

court may consider the complaint supplemented by undisputed facts evidenced in
the record, or the complaint supplemented by undisputed facts plus the court's
resolution of disputed facts, *Herbert v. National Academy of Sciences*, 974 F.2d
192 (D.C. Cir. 1992), this authority must be coupled with procedural safeguards.
The United States Court of Appeals for the District of Columbia Circuit has
provided instructions in this regard:

> First, a trial court relying upon its own resolution of disputed facts
> should provide . . . an explicit explanation of its findings so that
> judicial review might be had. . . . Second, though the trial court may
> rule on disputed jurisdictional facts at any time, if they are
> inextricably intertwined with the merits of the case it should usually
> defer its jurisdictional decision until the merits are heard. . . . Finally,
> should the trial court look beyond the pleadings, it must bear in mind
> what procedural protections could be required to assure that a full
> airing of the facts pertinent to a decision on the jurisdictional question
> may be given to all parties. Indeed, this Court has previously indicated
> that ruling on a Rule 12(b)(1) motion may be improper before the
> plaintiff has had a chance to discover the facts necessary to establish
> jurisdiction.

Appellees never filed an Answer to Appellants' complaint; thus, Appellees
have not disputed the facts upon which Appellants' case is based.  Appellees could
have requested limited discovery to test the jurisdictional predicates for subject
matter jurisdiction; however, they did not do so.  No discovery at all has been
taken, no evidentiary hearings have been held, and no witnesses have testified
under oath to the Court.

Given the complete absence of a factual record in this case (other than Appellants' complaint), it is not for the District Court to mount an organic challenge to the facts as pled by Appellants.  Specifically, the Court's critique that "the Second Amended Complaint contains no details regarding how the plaintiffs were able to assess the nationality of the Bank of America representative answering their calls," is neither a resolution of dispute fact nor a recitation of law. Indeed, the demand that the Appellants establish the facts that would be the basis for judgment is contrary pleading requirements of Fed. R. Civ. P. 8(a)(2) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  This rule "reflects a liberal notice pleading regime, which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Hickman v. Wells Fargo Bank N.A*., *supra*, 683 F. Supp. 2d at 783.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (U.S. 2007) (explaining, "Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the complained of conduct.).

Accordingly, the District Court's statements regarding the sufficiency of Appellants' factual proof of how they determined that the counterparts to their communications with Bank of America were foreign nationals are not entitled to

deference and, to the extent they form any basis for the District Court's dismissal of Appellants' claim, should be cited as error.  Additionally, the District Court's comment about the "irony" of Appellants' complaint, Op. at 9, finds no support in the record of the case.  Though judicial hostility to a cause of action is regrettable, it cannot be the basis for denying the subject matter jurisdiction of the United States District Court.[2]

      B.    The RFPA Legislative History Makes Clear that Appellees Must not Provide Government Authorities Access to Customer Financial Records and that Congress Intended Low Jurisdictional Barriers for a Claim.

In its Memorandum and Opinion, the District Court acknowledged yet ignored the briefing that Appellants had provided on the RFPA legislative history.  Op. at 8.  Yet, the RFPA legislative history directly addresses what the Court claims to "the utter failure of the Second Amended Complaint to offer any facts upon which this Court could conclude that Bank of America, in violation of the RFPA, released the financial records of plaintiffs Stein and Ransom."  Op. at 9

---

[2]     Had jurisdictional discovery been taken in this case, Appellees (and the Court) would have learned that "Rabindranauth" is a name that derives from India, and that Appellant Ramson hails from India.  It would have been discovered that Appellant Ramson's familiarity with dialects of Hindi and Urdu make him qualified to detect such accents in the voices of others.   Discovery would further reveal that Mr. Ramson's first name, "Rabindranauth" is a name that is immediately recognized as India-originating by the counterparts to conversations that Appellant Ramson has had with customer services representatives who, in their friendly parley with Mr. Ramson, have revealed themselves to located in India.

- 12 -

(emphasis added because the word "release" is not found in 12 U.S.C. §3402 (a)). The legislative history also reveals that it was the intent of Congress to establish a low jurisdictional threshold for bringing an RFPA action because doubts existed about the Executive Branch's enthusiasm for enforcing a statute that denied it intelligence information that it had obtained on a routine basis prior to the enactment of the RFPA.

RFPA was introduced in Congress in 1976, the country was reeling from the Watergate scandal which revealed the existence of a White House "enemies list" and the extent to which the Nixon Administration had used the IRS, CIA, and FBI to harass anti-war protestors, and the resignation of President Nixon.  The RFPA legislation reflected Congress's profound disappointment with the views of the Judicial and the Executive branches with respect to the privacy of financial records.

>    1.    *Prior to the RFPA, the Supreme Court Refused Broad Protection of Bank Records.*

>>    a.    <u>*California Bankers Ass'n v. Shultz*</u>.

In *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 94 S. Ct. 1494 (U.S. 1974), the plaintiff bank association, on behalf of its member banks, challenged "the constitutionality of the . . . Bank Secrecy Act of 1970 (Act), and the implementing regulations promulgated thereunder by the Secretary of the Treasury." *California Bankers Ass'n*, *supra*.  The express purpose of the Act was

- 13 -

"to require the maintenance of records, and the making of certain reports, which 'have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings.'" *Id*. at 26.  Rejecting the association's claim that the Act was unconstitutional, the Supreme Court held:

> To the extent that the regulations in connection with such transactions require the bank to obtain information from a customer simply because the Government wants it, the information is sufficiently described and limited in nature, and sufficiently related to a tenable congressional determination as to improper use of transactions of that type in interstate commerce, so as to withstand the Fourth Amendment challenge made by the bank plaintiffs.

*Id*. at 67.

Noteworthy in the Supreme Court's was the concurrence written in warning by Justice Powell and joined by Justice Blackmun.  Powell wrote:

> A significant <u>extension</u> of the regulations' reporting requirements . . . would pose substantial and difficult constitutional questions for me. In their full reach, the reports apparently authorized by the open-ended language of the Act touch upon intimate areas of an individual's personal affairs.  Financial transactions can reveal much about a person's activities, associations, and beliefs. At some point, governmental intrusion upon these areas would implicate legitimate expectations of privacy. (emphasis added).

*Id*. at 78-79.

b.    *United States v. Miller*.

The Defendant in *United States v. Miller*, 425 U.S. 435, 96 S. Ct. 1619 (1976) had been accused of operating an illegal distillery, thereby defrauding the U.S. Government of tax revenue.  "Prior to trial [Defendant] moved to suppress copies of checks and other bank records obtained by means of allegedly defective subpoenas *duces tecum* served upon two banks at which he had accounts. The records had been maintained by the banks <u>in compliance with the requirements of the Bank Secrecy Act of 1970</u>." *Miller*, *supra* at 436 (emphasis added).  Ruling that Miller had a Fourth Amendment interest in his bank records, the Fifth Circuit ruled that when the Government obtained Mr. Miller's financial records directly from his bank, it violated his Fourth Amendment rights.  *Id*. at 437.  The Supreme Court reversed.  Because <u>only</u> records that had been maintained pursuant to the Bank Secrecy Act had been obtained by the Government, and because the Supreme Court had already ruled, in *California Bankers Association*, that the Bank Secrecy Act did not violate the Fourth Amendment, the *Miller* court found no constitutional violation occasioned by the Government actually obtaining the records that the bank was already compelled to keep for the Government's benefit.  Issuing a subpoena for such documents *also* did not violate the Fourth Amendment because such documents were the bank's own documents.  *Miller* 442-443.

- 15 -

Justice Powell, the author of the foreboding concurrence in *California Bankers Ass'n,* wrote the opinion of the majority in *Miller* and the limited scope of the Supreme Court's holding in *Miller* is noteworthy. Specifically, Justice Powell made it clear that the scope of the *Miller* holding was limited to the request for documents that had already been deemed Constitutional under *California Bankers Assn. Miller* at 444. The Court cautioned that its disposition should not be read to apply to wide-ranging or "blanket" requests for information. *Id.* Moreover, the majority in *Miller* made clear that their views on the Constitutionality of the request for documents would have been different if the documents had <u>not</u> been obtained through legal process or had been obtained through an informal request by government agents. *Miller* at 445 n.7.

### 2.    *The RFPA was Congress's Reaction to Miller.*

Despite the Supreme Court's attempt to emphasize the narrowness of its holding, *Miller* sparked an immediate response from Congress – a Congress that was already reeling from revelations about Executive Branch surveillance of U.S. citizens. In introducing S. 1343, "The Right to Financial Privacy Act," Senator Cranston of California sought to prohibit "the disclosure of bank records to government officials unless there is written consent or a subpoena with prior notice to the depositor." HEARINGS BEFORE THE SUBCOMMITTEE ON FINANCIAL INSTITUTIONS OF THE COMMITTEE ON BANKING, HOUSING AND URBAN AFFAIRS,

United States Senate, Ninety-Fourth Congress, Second Session on S. 1343, June 16 and 17, 1976, Appendix at 20.  In testifying in favor of S. 1343 (and for his companion S. 3559 that would ensure that credit card companies were included into the scope of RFPA), Senator Bill Brock (R-TN) stated that "individuals must have protection from investigations which have no solid basis, but might only be instituted at the personal whim or suspicion of an overzealous government agent." Appendix 49.  Senator Brock also entered into the record, Appendix 52 , a number of categories of abuses giving rise to the need for Congressional legislation.  One such abuse:

> Demands are often made on banks on an informal basis by police for records on customers [sic] bank balances.  This might be by phone call, personal visit or letter. . . . In some cases a police officer might attempt to build a friendly, business relationship with a bank to facilitate quick access to customer bank records.  The official, in an effort to assist police in their work might willingly comply.  (emphasis added).

To respond to this abuse, Hope Eastman, Associate Director of the Washington National Office of the American Civil Liberties Union testified, "I think the bill needs to have . . . an absolute prohibition on informal access by any agency of the Government . . ."  (emphasis added).  Appendix 134-5.

*Miller* applied only to the "bank records" that had been kept in compliance with the Bank Secrecy Act.  Yet, Congress, in reversing the Supreme Court's diminution of privacy, applied the RFPA to financial records generally.  The final

- 17 -

definition of "financial records" is expansive – far beyond the "narrowly" defined

documents considered by the Supreme Court in *California Bankers Association*

and again in *Miller*.  At Section 3401 (2), "financial record" means "an original of,

a copy of, <u>or information known to have been derived from</u>, any record held by a

financial institution pertaining to a customer's relationship with the financial

institution."  (emphasis added).

     The Executive Branch's hostility to the RFPA was explicitly noted by the

Act's proponents.  Congress was advised on how to craft the legislation so as not

to leave the execution of its policy choice hostage to the discretion of the Justice

Department or other Executive Branch agencies.  Hope Eastman of the ACLU was

rather blunt in this regard.  She testified:

> We cannot emphasize strongly enough that whatever rights you create
> must be enforced not only by criminal penalties, but by civil penalties
> as well.  [There is a] growing view that you cannot rely on the
> executive branch to prosecute aggressively violations by its own
> officials. . . . Inclusion of a minimum recovery provision in this
> legislation . . . is essential due to the occasional difficulty in placing a
> cash value on the damage.  The right of privacy is priceless – though
> not easily evaluated in monetary terms.

     The final version of the RFPA firmly established the United States District

Court as having jurisdiction "to enforce any provision of this chapter," and did not

rely upon the Attorney General or other law enforcement official bringing an

enforcement action.  Moreover, the Act provided the very "liquidated" or statutory

damages recommended and coupled such statutory damages with wide-ranging

injunctive relief "to require that the procedures of this chapter are complied with."

Sections 3417 (a)(1) and 3418.

Importantly, the <u>draft</u> RFPA included the following liability trigger for

financial institutions:

> Section 5. (a)  No financial institution, or any officer, employee, or
> agent of a financial institution, may <u>provide</u> to any officer, employee,
> or agent of the United States, or any agency or department thereof, or
> of State or local government copies of, or the information contained
> in, the <u>financial records</u> of any customer . . .

Appendix at 154.

BankAmericard was unhappy with the scope of this draft legislation.  It

claimed:

> Because of the manner in which the provisions have been drafted, a
> financial institution might violate the Act through inadvertence and
> yet still be held civilly liable.  . . . This result would be extremely
> unfair to the bank and would not in any way contribute to the
> protection of the rights of the customer since the information would
> be released no matter how careful the bank may be.  <u>We would
> suggest that to maximize protection of the customer without unduly
> penalizing the bank, a provision be added to Section 14 (Civil
> Penalties) as follows:  "No financial institution shall be liable under
> this Section for disclosure of a customer's records unless it has **actual
> knowledge that the provisions of this Act have been violated** with
> respect to that disclosure."</u>  (emphasis added).  Appendix 155.

- 19 -

Congress declined BankAmericard's invitation to create a heightened trigger

for bank liability under the RFPA.  Critically important for the purposes of this

appeal and the revelation of Congressional intent is the fact that, after

BankAmericard's testimony, the final version of the RFPA <u>lowered</u> the trigger of

liability from "provide . . . financial records" to, in its final form, "provide . . .

<u>access to</u> . . . financial records."

            3.     *The RFPA in its Current Form.*

The final form of the RFPA accomplished almost everything the drafters and

supporters of greater rights for bank customers sought to achieve.  It contains

broad prohibitions on the Government obtaining financial records through anything

other than legal process.  12 U.S.C. § 3402.  It not only provides bank customers

with notice that the Government has attempted to obtain their financial records, 12

U.S.C. §3405 (2) and 3406(b), but it establishes judicial standing for such

customers to challenge such requests – the very standing that was missing in

*California Bankers Assn* and *Miller*.  Moreover, even where financial records are

obtained in full compliance with the RFPA, individuals are additionally protected

by a separate safeguard at12 U.S.C. § 3412 (a) that bars the intra-governmental

transfers of financial records (with narrowly defined exceptions).  The RFPA

contains broad proscriptions on financial institutions providing Government

authorities with <u>access to</u> financial records.  12 U.S.C. § 3403(a).  It provides teeth

to enforcing these Congressional prohibitions by providing citizen access to federal court to "to enforce <u>any</u> provision of this chapter." 12 U.S.C. § 3416 (emphasis added). It explicitly provides for broad injunctive relief "to require that the procedures of this chapter are complied with." 12 U.S.C. § 3418. It eases the litigation burden on citizen plaintiffs by absolving them of the need to plead and prove actual damages. 12 U.S.C. § 3417 (a) (1). It encourages private party enforcement by providing for the reimbursement of attorney's fees and costs for those successful in proving liability. 12 U.S.C. § 3417 (a) (4).

With respect to the deliberate change for the trigger of liability from being shifted from "provide" to "provide . . . access to," it is a basic principle of statutory interpretation is that courts should "give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed." *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883). The modern variant is that statutes should be construed "so as to avoid rendering superfluous" any statutory language. *Astoria Federal Savings & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991). Thus, this Court is obligated to infer that in lowering liability from "provide" to "provide access to" Congress intended this emphasis for liability to be on the access or accessibility of the records.

- 21 -

C.    The District Court Erred in Dismissing Appellants' Complaint.

    *1.      The District Court Relied on Case Law Inapposite to the RFPA.*

The District Court relied heavily upon on *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801 (E.D. Va. 2007) in granting Appellees' motion to dismiss.  However, the facts and the resulting ruling in *Walker* are dramatically distinguishable from the facts alleged in Appellants claim.  Defendant S.W.I.F.T. SCRL (the Society for Worldwide Interbank Financial Telecommunication, or SWIFT) is an international cooperative consortium of banks, brokers, and investment managers. Based in Brussels and with its principal American place of business in northern Virginia, SWIFT supplies secure standardized messaging services to financial institutions.

Plaintiffs' claims in Walker were founded on an article published in the *New York Times* of June 23, 2006.  The *Times* reported "on the existence of the Terrorist Financing Tracking Program (TFTP), a post-9/11 initiative of the federal executive branch to track funds flowing to international terrorist organizations." The *Time* article reported, "that SWIFT, in compliance with administrative subpoenas, had provided the government with information concerning financial transmissions SWIFT had facilitated." *Walker v. S.W.I.F.T. SCRL*, *supra,*517 F. Supp. 2d at 804-805.  The court concluded that "plaintiffs' complaint . . . relies heavily on the anonymous and contradictory information contained in [the *Times*] article." *Walker* at 804.  Importantly, the named Plaintiffs did not allege facts that indicated

a personal stake in the issue brought before the United States District Court for the Eastern District of Virginia. As the court listed the deficiencies, "[t]he complaint fail[ed] to identify plaintiffs' bank or banks, fail[ed] to establish whether such bank or banks are members of SWIFT, and fail[ed] to allege any facts giving rise to a plausible inference that plaintiffs' financial information was disclosed by SWIFT." *Id.* at 809. Not surprisingly, the court found that the "complaint fails to allege facts sufficient to demonstrate the constitutionally required injury in fact standing requirement. *Id.* Yet, the Court was clear that the dismissal was without prejudice and invited Plaintiffs to file an amended complaint, instructing that "Plaintiffs need not establish standing to a certainty; they must only allege facts that make standing plausible rather than merely conceivable." *Id.*

In this case, by contrast, the business practices complained of by Plaintiff cannot be denied by Appellees. There exists no conjecture about the fact that Appellants are Appellees' customers; Appellees are financial institutions covered by RFPA; Appellees possess Appellants' financial records; and Appellees regularly – as part of their business model – transmit financial records overseas. Moreover, Plaintiffs, based on their own interactions with Bank of America customer service representatives, have a well-founded ground for asserting that their telecommunications and attendant financial records have been transferred out of the United States (and the legal protections found therein) to foreign national

- 23 -

customer service representatives who reside outside the protections and prohibitions of U.S. law.  Nor can there be any doubt about the legal consequence of Appellees transmitting Appellants' financial records outside of the obligations of U.S. law, *i.e.*, that the legal inhibitions that deny government authorities access to Mr. Ramson and Mr. Stein's financial records when they are husbanded within the United States, are completely forfeited.  In short, none of the defects that prevented the consideration of Plaintiffs' claims in *Walker* are not defects of Appellants' claims in this case.

The facts of *Amidax Trading Grp. v. SWIFT SCRL*, 607 F. Supp. 2d 500 (S.D.N.Y. 2009), *aff'd*, No. 09-3293-cv, 2011 U.S. App. LEXIS 25074 (2d Cir. Dec. 19, 2011) are also distinct from the facts of this case.  The scope of Plaintiff's complaint in Amidax was far greater than the scope of Appellants' complaint. Notwithstanding the case caption, Amidax's complaint primarily targeted government agencies and government officials.  Though Amidax sued under the RFPA, it sued under the section, 12 U.S.C. §3402 that serves as a prohibition on the government conduct.  Thus, an allegation that government authorities had actually obtained its financial records was a *sina qua non* element of establishing the courts' jurisdiction.  In contrast to Appellants' cause of action, there was no RFPA claim against a financial institution.

By contrast, Appellants' thirty-five page complaint targets only Appellants' bank (and its related subsidiaries) and brings only a single claim under 12 U.S.C. §3403(a) (targeting financial institutions) with a corresponding request for an injunction under 12 U.S.C. § 3418).  Though some of the allegations of fact with respect to the government's capabilities, sources, and methods are pled "on information and belief," and though Appellants, through their direct interactions with Bank of America personnel "believe" that such persons are foreign nationals who reside overseas (this information is not volunteered by Appellees), Appellants' claims are not founded on conjecture or speculation.  Again, the core facts of Appellants' complaint are, in the final analysis, indisputable. The trigger for the lawsuit is interactions between Appellants and financial service personnel thought to be foreign nationals residing overseas.  By transmitting Appellants' financial records to locales where there exist no inhibition on government authorities accessing them and where the U.S. Government has established a pervasive surveillance dragnet for the very purpose of accessing electronic transmissions, including transmissions of Appellants' financial records, Bank of America is providing the U.S. Government access to financial records that the U.S. Government lacks were such financial records husbanded within the United States. The specificity lacking from the *Walker* and *Amidax* complaints are present in Appellants' complaint.

2.     *The District Court Ignored the Deliberately Low Jurisdictional Threshold for RFPA Actions.*

As has been discussed, 12 U.S.C. § 3416, the jurisdictional statement for an RFPA claim, is low.  In crafting the RFPA, Congress established the broadest possible citizen suit standing to ensure compliance with its terms.  *Cf. Bennett v. Spear*, 520 U.S. 154, 164-165 (U.S. 1997) (interpreting the Endangered Species Act of 1973 and finding the statutory language that "any person may commence a civil suit" (emphasis added) to be a "remarkable [of] breadth when compared with the language Congress ordinarily uses). *See also Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209 (U.S. 1972) (holding that "complaints by private persons are the primary method of obtaining compliance with the [Civil Rights] Act" and holding that statutory language allowing "a suit to be started 'by a person claiming to be aggrieved' . . . showed a congressional intention to define standing as broadly as is permitted by Article III of the Constitution.").  Compared to the Endangered Species Act and the Civil Rights Act, the RFPA is even more expansive as its language is not limited to persons or even those who are injured. *Compare* 33 U.S.C. § 1365(g) (Clean Water Act) "[any person] having an interest which is or may be adversely affected,"; 30 U.S.C. §1270(a) (Surface Mining Control and Reclamation Act) (same); 15 U.S.C. §797(b)(5) (Energy Supply and Environmental Coordination Act) "any person suffering legal wrong,"; or 42 U.S.C. § 9124(a) (Ocean Thermal Energy Conversion Act) "any person having a

- 26 -

valid legal interest which is or may be adversely affected . . . whenever such action constitutes a case or controversy."  Even where Congress establishes a right by statute, it knows how to stem the flow of potential litigants.  *See e.g.* Unfair Trade Practices, 7 U.S.C. § 2305(c) authorizing suit only by "any person injured in his business or property," see also 15 U.S.C. § 72 (same), or only by "competitors, customers, or subsequent purchasers," § 298(b).  That the language of the RFPA opens the door so widely to the United States District Courts should be no surprise given that, as discussed, the RFPA was established for the specific purpose of reestablishing standing where it had been eliminated by the Supreme Court in *Miller* and where obvious skepticism existed on the part of Congress that the Executive Branch would ever take a lead role in enforcing the RFPA.

Given that Congress deliberately set the trigger for RFPA liability as providing "access," this Court is obligated to give those words full enforcement effect.  Given the extraordinary surveillance capabilities of government, it must be assumed that the only impediment to accessing electronic signals, including electronically transmitted financial records, is the illegality of such access and the personal liability that is threatened through such violations. *See e.g., Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971); *Amnesty Intl. v. Clapper*, 638 F.3d 118 (2nd Cir 2011).  Yet the laws that inhibit access to such financial records are completely inapplicable overseas providing government authorities the very access

- 27 -

that is prohibited by law within the United States.

It is axiomatic that foreign nationals residing overseas do not, and cannot have the protection of the laws of the United States.  The Supreme Court has stated:

> [The] extraterritorial application of organic [U.S.] law would have been so significant an innovation in the practice of governments that, if intended or apprehended, it could scarcely have failed to excite contemporary comment. Not one word can be cited. No decision of this Court supports such a view.  None of the learned commentators on our Constitution has even hinted at it. The practice of every modern government is opposed to it.

*Johnson v. Eisentrager*, 339 U.S. 763, 784, 70 S. Ct. 936 (U.S. 1950) (quoted by Chief Justice Rehnquist in *United States v. Verdugo-Urquidez*, 494 U.S. 259, 269, 110 S. Ct. 1056 (U.S. 1990)).  Thus, foreign nationals residing overseas cannot compel the U.S. Government to comply with the RFPA – or any other law -- with respect to U.S. Government activities in such overseas locales.  Accordingly when Bank of America transmits financial records from the United States to foreign nationals residing overseas, it transmits such records to persons who are not bound by the restrictions of the RFPA, and to locales where the U.S. Government is free gain access to financial records without worry about the restrictions on such activities as articulated by the RFPA.

The U.S. Government breaks no law when it seizes and accesses electronic signals that terminate with, or originate from foreign nationals residing overseas.

- 28 -

*Jabara v. Webster*, 691 F.2d 272, 278-279 (6th Cir. 1982).  Once one branch of the

Executive branch is in lawful possession of signals intelligence, it is free to

disseminate such information to other government authorities. *Id.*  In their

complaint, Appellees asserted (without challenge) that U.S. Government

authorities have invested hundreds of billions of dollars for the purpose of

accessing electronic transmissions that terminate overseas, and that the public

record contains recitations by the Executive Branch asserting the plenary legal

authority to access such electronic transmissions.  Appellants' detailed factual

allegations, statements of legal authority, and expressions of intent create the

inference that Executive Branch access to financial records is not just possible,

more than even plausible, but probably undeniable.  The RFPA clearly states that

"No financial institution, or officer, employees, or agent of a financial institution,

may provide to any Government authority access to or copies of, or the

information contained in, the financial records of any customer except in

accordance with the provisions of this chapter."  12 U.S.C. § 3403 (a).  (emphasis

added).  Under the plain language of the RFPA, financial institution liability under

the RFPA is triggered by providing access to financial records.  As Appellees are

offending the Right to Financial Privacy Act by providing government authorities

with access to Appellants financial records, Appellants have standing to bring an

action in the United States District Court for the District of Columbia to arrest this statutory breach.

## CONCLUSION

Appellants pray that the Court will reverse the judgment of the District Court and remand with instructions to reinstate the cause of action and immediately consider Appellees' motion to dismiss under Fed. R.Civ. P. 12 (b)(6). Alternatively, should the Court have doubts about the factual basis for subject matter jurisdiction, that the Court remand this action so that limited discovery can be conducted to create the factual record necessary to determine jurisdiction.

Respectfully submitted,

/s/ Joseph A. Hennessey

Joseph A. Hennessey, Esq.
DC Bar No. 453582
Attorney for Plaintiff-Appellants
Beins, Goldberg & Hennessey, LLP
2 Wisconsin Circle, Suite 700
Chevy Chase, MD  20185
240-235-5040
JHennessey@bghllp.com

### CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

This brief complies with the type-volume limitation of Fed.R. App. P. 32(a)(7)(B) because this brief contains 7,003 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and this brief uses a monospaced typeface and contains 641 lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in New Times Roman, 14 pt. font.  Certified this Friday, January 25, 2013.

/s/ Joseph A. Hennessey

Joseph A. Hennessey, Esq.
DC Bar No. 453582
Attorney for Plaintiff-Appellants
Beins, Goldberg & Hennessey, LLP
2 Wisconsin Circle, Suite 700
Chevy Chase, MD  20185
240-235-5040
JHennessey@bghllp.com

A

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on January 18, 2013, the original copy of

Appellant's Brief on Appeal was served on Defendant-Appellees Bank Of America

Corporation; Bank Of America, NA; FIA Card Services, NA; and MBNA

Technology, Inc. using the Court's CM/ECF which service notice upon counsel of

record for Defendant-Appellees.  The undersigned certifies that on January 25,

2013, the Corrected Appellant Brief on Appeal was served on Defendant-

Appellees Bank of America upon said counsel of record for Defendant-Appellees:

| | |
|---|---|
| Bradley Stuart Lui, Esq. | Robert A Salerno, Esq. |
| Morrison & Foerster | Morrison & Foerster |
| 2000 Pennsylvania Avenue, NW, #600 | 2000 Pennsylvania Avenue, NW, #600 |
| Washington, DC  20006-188 | Washington, DC  20006-1888 |
| blui@mofo.com | rsalerno@mofo.com |

The undersigned also certifies that he will cause eight (8) true and correct

Copies of the Corrected brief to be transmitted to the Clerk of this Court by hand

delivery, and two (2) true and correct copies of the brief will be transmitted to the

above-listed counsel in the same manner.

<u>/s/ Joseph A. Hennessey</u>

Joseph A. Hennessey, Esq.
DC Bar No. 453582
Attorney for Plaintiff-Appellants
Beins, Goldberg & Hennessey, LLP
2 Wisconsin Circle, Suite 700
Chevy Chase, MD  20185
240-235-5040
JHennessey@bghllp.com

B